J-S37043-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1397 EDA 2025 |

Appeal from the Order Entered May 7, 2025
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0000747-2023

| | | |
|---|---|---|
| IN THE INTEREST OF: K.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1398 EDA 2025 |

Appeal from the Decree Entered May 8, 2025
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000451-2024

BEFORE:   DUBOW, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:               **FILED DECEMBER 30, 2025**

Appellant, J.C. ("Mother"), appeals from the May 8, 2025 decree

involuntarily terminating her parental rights to her biological son, K.M., born

_____

[*] Former Justice specially assigned to the Superior Court.

in February of 2023.[1]  Mother also appeals from the accompanying order that changed K.M.'s permanency goal from reunification to adoption.  Mother's court-appointed counsel, Robert Horwitz, Esquire ("Counsel"), has filed a petition to withdraw and an accompanying brief, pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).  After careful review, we grant Counsel's petition to withdraw, affirm the involuntary termination decree, and dismiss the appeal from the goal change order as moot.

We gather the relevant factual and procedural history of this matter from the certified record.  In approximately August of 2023, the Philadelphia Department of Human Services ("DHS") received a report alleging that Mother was residing in a homeless shelter wherein she was observed displaying aggressiveness towards then-six-month-old K.M. and the shelter staff.  ***See*** Notes of Testimony ("N.T."), 2/19/25, at 8-9.  Thereafter, on August 11, 2023, the trial court placed K.M. in the emergency protective custody of DHS.  On August 14, 2023, following a shelter care hearing, the court confirmed DHS's custody of K.M. and maintained his placement in a pre-adoptive foster home.

On October 30, 2023, the court adjudicated K.M. dependent and established his permanency goal as reunification.  In furtherance thereof, the

---

[1] The trial court also involuntarily terminated the parental rights of K.M.'s biological father, Q.W., and any unknown putative fathers by separate decrees on February 19, 2025.  Neither Q.W. nor any unknown putative father have separately appealed or participated in this appeal.

court ordered Mother to comply with the following permanency objectives, *inter alia*: (1) complete anger management treatment; (2) attend a mental health evaluation and follow any recommendations; (3) complete parenting classes; (4) obtain and maintain housing and employment; and (5) participate in supervised visitation. DHS arranged for the local Community Umbrella Agency ("CUA") to provide Mother with the relevant services.

According to CUA case manager, Samantha Brewington, Mother completed an anger management program during K.M.'s dependency. **See** N.T., 2/19/25, at 13. However, Mother required additional treatment after she was criminally charged following a workplace altercation. **See id.** Mother did not complete any additional anger management treatment. **See id.** Despite being referred multiple times, Mother never attended a mental health evaluation or parenting classes. **See id.** at 10-12. Mother also did not have stable housing or employment at the time of the subject hearing. **See id.** at 13-15.

With respect to supervised visitation, Mother was offered two visits per week at DHS. **See id.** at 15. Mother's attendance was inconsistent, and she never progressed past supervised visitation. **See id.** at 15-17, 34.

On December 12, 2024, DHS filed a petition to involuntarily terminate Mother's parental rights to K.M. pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). DHS also filed a separate petition to change K.M.'s permanency goal from reunification to adoption.

The trial court held a combined evidentiary hearing on DHS's petitions on February 19 and May 7, 2025,[2] at which time K.M. was two years old.[3] DHS presented the testimony of Ms. Brewington and CUA family support specialist Dominique Miller. Mother was present and represented by Counsel.

By decree dated May 7, 2025, and entered on May 8, 2025, the trial court involuntarily terminated Mother's rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). The court entered an accompanying order that changed K.M.'s permanency goal from reunification to adoption on May 7, 2025.

---

[2] At the hearing on February 19, 2025, Mother made known her desire to voluntarily relinquish her parental rights to K.M. and executed the relevant paperwork. **See** N.T., 2/19/25, at 6-7, 35-36; **see also** 23 Pa.C.S.A. § 2504. Nevertheless, the court presided over the evidentiary hearing and closed the record with respect to the involuntary termination and goal change petitions. Upon Mother timely revoking her voluntary relinquishment, the court scheduled closing arguments on the subject petitions for May 7, 2025. **See** N.T., 5/7/25, at 6-7.

[3] The trial court appointed the guardian *ad litem* ("GAL") from K.M.'s dependency matter to represent him during the contested involuntary termination proceeding. Due to K.M.'s age, it is clear that he was unable to express his preferred outcome in this case. Thus, the court's appointment of a GAL satisfied K.M.'s right to legal counsel pursuant to 23 Pa.C.S.A. § 2313(a). **See In re Adoption of K.M.G.**, 240 A.3d 1218, 1235 (Pa. 2020) ("appellate courts should engage in *sua sponte* review to determine if orphans' courts have appointed counsel to represent the legal interests of children in contested termination proceedings, in compliance with" Section 2313(a)); **see also In re T.S.**, 192 A.3d 1080, 1089-93 (Pa. 2018) (holding, in the case of children who were two and three years old, that an attorney-GAL representing the best interests of the children satisfied their right to legal counsel pursuant to Section 2313(a)).

- 4 -

On June 5, 2025, Counsel filed timely notices of appeal and contemporaneous concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), which this Court consolidated *sua sponte*. The trial court filed a Rule 1925(a) opinion, wherein it largely directed this Court to its reasoning stated on the record in open court at the subject hearing. **See** Trial Court Opinion ("T.C.O."), 8/4/25. On September 4, 2025, Counsel filed an **Anders** brief in this Court, along with a petition to withdraw as Mother's attorney.[4]

When counsel seeks to withdraw pursuant to **Anders** and its progeny, this Court may not review the merits of the appeal without first addressing counsel's request to withdraw. **See In re Adoption of M.C.F.**, 230 A.3d 1217, 1219 (Pa. Super. 2020). To satisfy the procedural requirements in requesting to withdraw from representation, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [**Anders**] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

**Commonwealth v. Cartrette**, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citation omitted). Counsel must also "attach to their petition to

---

[4] The **Anders** procedure extends to appeals from orders involuntarily terminating parental rights. **See In re V.E.**, 611 A.2d 1267, 1275 (Pa. Super. 1992).

withdraw a copy of the letter sent to their client advising him or her of their rights." ***Commonwealth v. Millisock***, 873 A.2d 748, 752 (Pa. Super. 2005).

Here, Counsel has submitted both a petition to withdraw and a brief certifying that, following a conscientious and thorough review of the record and relevant case law, he believes Mother's appeal is frivolous. On September 4, 2025, Counsel served Mother with a copy of his ***Anders*** brief. In his petition to withdraw, Counsel attached a letter dated and served to Mother on September 4, 2025, which suitably advised her of her rights to retain private counsel or raise additional arguments that she deems worthy of this Court's attention.[5] Thus, we conclude that the procedural requirements of ***Cartrette*** and ***Millisock*** are satisfied.

In addition, our Supreme Court has set forth the following requirements for ***Anders*** briefs:

> [W]e hold that in the ***Anders*** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Santiago***, 978 A.2d at 361.

---

[5] To date, Mother has not filed any response in this Court.

The ***Anders*** brief submitted by Counsel provides a sufficient summary of the procedural and factual history of this matter, including citations to the certified record. ***See Anders*** Brief at 8-10, 22-26, 33-35, 37-38. Counsel's ***Anders*** brief also contains an adequate discussion of the controlling Pennsylvania law with respect to involuntary termination of parental rights and goal changes to adoption. ***See id.*** at 18-22, 31-32, 36-37.

Furthermore, in his brief, Counsel determines that his review of the record revealed no arguable claims that could support Mother's challenges to the involuntary termination of her parental rights and K.M.'s goal change to adoption. ***See id.*** at 16-40. Consequently, Counsel concludes that any claim Mother would raise is frivolous because of the undisputed evidence that supports the subject decree and order. ***See id.*** Accordingly, Counsel's brief also complies with the requirements of ***Santiago***, ***supra***. Based upon the foregoing, we conclude that Counsel has complied with the technical and procedural requirements of ***Anders***.

We must next "conduct a review of the record to ascertain if on its face, there are non-frivolous issues that counsel, intentionally or not, missed or misstated." ***Commonwealth v. Yorgey***, 188 A.3d 1190, 1197 (Pa. Super. 2018) (*en banc*). We begin with the involuntary termination decree, which we review for an abuse of discretion. ***See Interest of M.E.***, 283 A.3d 820, 829 (Pa. Super. 2022).

This Court has explained:

In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.

An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.

In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Id.* at 829-30 (internal citations and quotation marks omitted).

The involuntary termination of parental rights is governed by Section 2511 of the Adoption Act, which calls for a bifurcated analysis that first focuses upon the "eleven enumerated grounds" of parental conduct that may warrant termination. *Id.* at 830; *see also* 23 Pa.C.S.A. § 2511(a)(1)-(11). If the trial court determines the petitioner has established grounds for termination under one of these subsections by "clear and convincing evidence," the court

- 8 -

then assesses the petition pursuant to Section 2511(b), which focuses upon the child's developmental, physical, and emotional needs and welfare. ***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013); ***see also*** 23 Pa.C.S.A. § 2511(b). This Court need only agree with the trial court's determination as to any one subsection of Section 2511(a), in addition to Section 2511(b), in order to affirm termination. ***See M.E.***, 283 A.3d at 830 (citing ***In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*)).

In his ***Anders*** brief, Counsel avers that the trial court properly terminated Mother's parental rights pursuant to Section 2511(a) and (b). ***See Anders*** Brief at 16-35. Our analysis will focus upon Section 2511(a)(2) and (b),[6] which provide, as follows:

> **(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . .
>
> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights

---

[6] By analyzing only Section 2511(a)(2), we draw no conclusions as to the trial court's findings pursuant to Sections 2511(a)(1), (5), and (8). ***See M.E.***, 283 A.3d at 830.

of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

In order to satisfy Section 2511(a)(2), the petitioning party must establish: "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re Adoption of A.H.*, 247 A.3d 439, 443 (Pa. Super. 2021). Grounds for termination pursuant to Section 2511(a)(2), however, "are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied." *Id.* (citing *In re Z.P.*, 994 A.2d 1108, 1117 (Pa. Super. 2010)). Overall, we emphasize that "[p]arents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties." *A.H.*, 247 A.3d at 443.

If the trial court concludes that adequate grounds for termination exist pursuant to Section 2511(a), the court then turns to Section 2511(b), which requires that it "give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b); *see also T.S.M.*, 71 A.3d at 267. Our Supreme Court has directed that a Section

- 10 -

2511(b) inquiry must include consideration for the bond between the parent and the child. *In re E.M.*, 620 A.2d 481, 485 (Pa. 1993). Our Supreme Court has further explained that "[i]t is only a necessary and beneficial bond, after all, that should be maintained." *Interest of K.T.*, 296 A.3d 1085, 1109 (Pa. 2023). The "severance of a necessary and beneficial relationship [is] the kind of loss that would predictably cause 'extreme emotional consequences' or significant, irreparable harm." *Id.* at 1109-10. The extent of the "bond-effect analysis necessarily depends on the circumstances of the particular case." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

The *K.T.* Court recognized that "case law indicates that bond, plus permanency, stability and all 'intangible' factors may contribute equally to the determination of a child's specific developmental, physical, and emotional needs and welfare, and thus are all of 'primary' importance in the Section 2511(b) analysis." *K.T.*, 296 A.3d at 1109. Further, trial courts "must consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *Id.* at 1106.

In this case, our review verifies that the competent record evidence supports the decree pursuant to Section 2511(a)(2) and corroborates Counsel's conclusion that any claim Mother could raise regarding this subsection is frivolous. The family's CUA case manager, Ms. Brewington, testified that Mother "previously" completed an anger management treatment program, although she did not specify exact dates. *Id.* at 13. Nevertheless,

Ms. Brewington stated that, subsequent to completing the first program, Mother was involved in a dispute, wherein she broke windows at the building of her then-workplace. *See id.* Mother was criminally charged in connection with this incident. *See id.* Ms. Brewington testified that Mother needed to complete an additional anger management program because this altercation occurred after her completion of the first program. *See id.* Ms. Brewington confirmed that Mother had not successfully completed another anger management program, and therefore her anger management issues remained unresolved at the time of the subject hearing. *See id.*

Regarding mental health, Ms. Brewington testified that the concerns about Mother's mental health were intertwined with her anger management issues inasmuch as Mother has "issues regulating her emotions in general." *Id.* at 10. Ms. Brewington stated that Mother was referred to "various" providers to attend a mental health evaluation during the underlying dependency matter. *Id.* at 10-11. Ms. Miller, the family's CUA family support specialist, testified that she assisted Mother with scheduling a mental health evaluation at the Consortium in October of 2024. *See id.* at 33. Ms. Miller explained that Mother failed to appear at the appointment and never rescheduled. *See id.* Ms. Brewington testified that, because Mother never completed the court-ordered mental health evaluation, it was never determined what diagnoses and treatment, if any, she required in order to make progress with respect to her mental health. *See id.* at 11.

Further, Ms. Brewington testified that Mother was referred to parenting classes at the Achieving Reunification Center ("ARC") but did not complete the program. *See id.* at 12. Ms. Brewington stated that, at the time of the subject hearing, Mother had not obtained stable housing or employment. *See id.* at 13-15. She testified that Mother "goes from shelter to shelter." *Id.* Ms. Brewington stated that Mother was referred to the housing assistance program at ARC but never participated. *See id.* at 14. Ms. Brewington also testified that Mother has not maintained steady employment and was presently unemployed. *See id.* at 14-15. As a result, Ms. Brewington stated that Mother's permanency objectives regarding anger management, mental health, parenting, housing, and employment were not remedied at the time of the subject hearing. *See id.* at 11-13, 15.

The foregoing undisputed record evidence amply demonstrates that Mother's repeated and continued incapacity, namely her unresolved anger management and mental health issues, has caused K.M. to be without essential parental care, control, or subsistence necessary for his physical or mental well-being. The record also undoubtedly supports that Mother's incapacity cannot or will not be remedied inasmuch as K.M. has been removed from her custody for almost two years and she has failed to make any appreciable progress in achieving reunification. Therefore, we discern no abuse of discretion in the trial court's determination that termination of Mother's parental rights was warranted pursuant to Section 2511(a)(2).

Here, our review further confirms that the certified record supports the decree pursuant to Section 2511(b). Accordingly, the record also validates Counsel's assessment that any potential argument that Mother could raise with regard to this subsection is frivolous.

Mother was offered two supervised visits per week with K.M. at DHS. *See* N.T., 2/19/25, at 15. However, Ms. Brewington testified that Mother did not consistently attend supervised visitation with K.M.[7] *See id.* at 16-17. Ms. Brewington testified that there were multiple instances where K.M. was present at DHS for a visit and Mother failed to attend. *See id.* at 17. Ms. Brewington and Ms. Miller stated that Mother never progressed to unsupervised visitation due to her failure to make progress with her permanency objectives discussed at length above. *See id.* at 15, 34. Ultimately, Ms. Brewington testified that there is no parental bond between K.M. and Mother; therefore, K.M. would not suffer irreparable harm if Mother's parental rights were terminated. *See id.* at 18, 20.

_____

[7] DHS introduced a total of six exhibits, all of which the court admitted without objection. *See* N.T., 2/19/25, at 6. We note with displeasure that DHS Exhibit 6, CUA's log of Mother's missed visits, is missing from the certified record. We pointedly remind Counsel that appellants bear "the responsibility to make sure that the record forwarded to an appellate court contains those documents necessary to allow a complete and judicious assessment of the issues raised on appeal." *Commonwealth v. Wint*, 730 A.2d 965, 967 (Pa. Super. 1999) (citations and internal quotation marks omitted); *see also* Pa.R.A.P. 1921 note ("Ultimate responsibility for a complete record rests with the party raising an issue that requires appellate court access to record materials.") (citation omitted).

Conversely, Ms. Brewington stated that K.M. has been placed with his pre-adoptive foster mother since his removal twenty-one months prior to the subject hearing. *See id.* at 26. Ms. Brewington testified that K.M. is "very bonded" to his foster mother and "looks to her as a mother figure." *Id.* at 23, 27. Ms. Brewington stated that there is a possibility that K.M. would suffer irreparable harm if removed from his foster mother's care. *See id.* at 27. She continued that K.M.'s foster mother provides stability and safety for him that Mother cannot. *See id.*

The record is clear that K.M. does not share a parental bond with Mother. The foregoing undisputed evidence supports the trial court's conclusion that K.M.'s developmental, physical and emotional needs and welfare were best served by termination of Mother's parental rights. Therefore, we discern no abuse of discretion in the court's conclusion that DHS met its evidentiary burden pursuant to Section 2511(b). We agree with Counsel's assessment that any issue Mother would raise as to this subsection is frivolous. We therefore affirm the subject decree that involuntarily terminated Mother's parental rights to K.M. pursuant to Section 2511(a)(2) and (b).

Finally, with respect to Mother's appeal from the goal change order, we conclude that it is moot given our disposition regarding Mother's appeal from the involuntary termination decree. *See Interest of A.R.*, 311 A.3d 1105, 1114 (Pa. Super. 2023) (holding that the affirmance of termination of parental

rights renders an appeal of the goal change to adoption moot). Thus, we dismiss the goal change order appeal as moot.

Based upon our independent review, the certified record reveals no preserved non-frivolous issues that would arguably support Mother's appeal, and we agree with Counsel's assessment that this appeal is wholly frivolous. Thus, we grant Counsel's petition to withdraw from his representation of Mother, affirm the decree involuntarily terminating Mother's parental rights to K.M. pursuant to 23 Pa.C.S.A. § 2511(a)(2) and (b), and dismiss Mother's appeal from the goal change order as moot.

Petition to withdraw granted. Decree affirmed. Appeal from goal change order dismissed as moot.

Judge Kunselman joins in the decision. Judge Dubow did not participate.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/30/2025